Ruth COOPER, Plaintiff,

v.

OAK PARK SCHOOL DISTRICT, Oak Park Board of Education, Philip J. Goodman, Attorney, Mr. Arden Detert, Principal, and Mr. Kent D. Schultz, Attorney, et al., Defendants.

No. 85–CV–2345–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 6, 1986.

Dice, Sweeney, Sullivan, Feikens, Hurbis & Foster, P.C. by William McCandless, Detroit, Mich., for plaintiff.

Shifman, Goodman & Carlson, P.C. by Burton R. Shifman and Marc S. Berlin, Southfield, Mich., for defendants.

## OPINION

GILMORE, District Judge.

This is a Title VII case in which a discharged teacher claims she was discharged on the basis of religion and age. The case is before the Court upon a motion for summary judgment. The Court has reviewed the record, and, for the reasons set forth below, determines that defendants' motion for summary judgment should be granted.

### I

Plaintiff was a kindergarten teacher in the Oak Park School District from 1961 until the 1978–79 school year. In 1977–78, she was transferred to the Einstein School where she taught kindergarten, and in the spring of 1978 it was determined she would teach third grade during the 1978–79 school year. Her principal, a Mr. Detert, gave her curriculum material to review. He also suggested other ways she should prepare for this change in her teaching assignment.

In the spring of 1979, Mr. Detert filed charges with the School District alleging that plaintiff's services were unsatisfactory. The School District held a series of hearings from May 1979 through February 1980. Testimony of witnesses was present-

ed and documentary evidence was received, creating a 2,200 page transcript. Both the charging party and the teacher were represented by counsel. The Board found that plaintiff had great difficulty in maintaining discipline. The Board further found that plaintiff demonstrated a lack of ability to handle aggressive behavior of students, a lack of ability to effectively manage her class room, a lack of ability to control her anger, which resulted in the physical handling of students, a lack of ability to effectively communicate with her students, and a negative attitude affecting the learning environments in her classrooms. The Board found that all of these factors resulted in her lack of ability to carry out her duties and responsibilities as a teacher in the Oak Park Public Schools. It further found that her actions were injurious to her students. The Board thereby unanimously found reasonable and just cause for her termination as a teacher within the Oak Park School District. Plaintiff was terminated on March 10, 1980.

Plaintiff appealed her termination to the State Tenure Commission, which also held hearings. She claimed on her appeal to the Tenure Commission that her discharge was not for "reasonable and just cause", as required by the Teachers' Tenure Act, (M.C.L.A. 38.71 *et seq.*), but was the result of harassment, age, and religious discrimination, or the result of school administration misfeasance.

On December 8, 1981, the State Tenure Commission entered a decision and order upholding the School District's discharge of plaintiff. In that decision, the Commission spent six pages detailing the evidence and the findings regarding the deficiencies of plaintiff's teaching performance. These deficiencies, according to the Tenure Commission, focused around disciplinary problems in her classrooms, numerous findings of occasions where students wandered in and out of class unsupervised, and several occasions where plaintiff struck students in a manner inconsistent with school policy. The Tenure Commission also found that plaintiff was unable to structure her lessons to communicate effectively with her students.

The Tenure Commission also dealt with other defenses raised by the plaintiff. The Commission found that plaintiff had received adequate assistance from her principal, and that her principal had not harassed her. Finally, the Tenure Commission found that plaintiff failed to establish as a defense that her discharge was motivated by religious or age discrimination. On that point, the Commission stated, at page 17 of its formal decision and order:

> Finally, appellant asserted that Mr. Detert's and Dr. May's attempt to discharge her was motivated by religious or age discrimination. The evidence in support of this claim is quite sparse. Mr. Detert once suggested that Mrs. Cooper, who strictly observed the rules of the Jewish faith, go to Florida rather than to Israel for Passover. Appellant's age discrimination claims rest solely on the fact that the teacher who replaced her was more than 20 years her junior. The district makes a point in hiring younger teachers when replacing retiring teachers because they are at lower steps on the salary schedule. The essence of discrimination is that otherwise similarly situated individuals are treated differently because of their race, sex, religion, or age. *C. Thorrez Industries, Inc. v. Michigan Department of Civil Rights*, 88 Mich.App. 704 [278 N.W.2d 725] (1979), (involving a claim of sex discrimination). Appellant has not established that either Mr. Detert or Dr. May harbored any ill feelings toward Jewish employees or towards employees of her age (54). Nor has she shown how these factors resulted in any differential treatment. We, therefore, conclude that appellant has failed to establish this defense as well.

Plaintiff appealed the Tenure Commission decision to the Ingham County Circuit Court, which affirmed, saying, in an unpublished opinion (*Ruth Cooper v. Oak Park School District, et al.*, No. 82–28807–AA, slip op. at 2, (Circuit Court for the County of Ingham, March 1, 1983) ):

This Court finds that just and reasonable cause existed for petitioner's discharge and that the decision was based on competent, material and substantial evidence on the whole record and thus affirms the Tenure Commission's decision.

Plaintiff then appealed to the Michigan Court of Appeals, which affirmed in an unpublished opinion (*Cooper v. Oak Park School District*, No. 70247, slip op. at 3, (Michigan Court of Appeals, June 22, 1984):

It is our opinion that there exists competent, material, and substantial evidence to support the Tenure Commission's finding that there was reasonable and just cause to uphold plaintiff's discharge by defendant.

An application for a rehearing was denied by the Court of Appeals on August 13, 1984. Leave to appeal to the Supreme Court of Michigan was denied on March 28, 1985. *Cooper v. Oak Park School District*, 422 Mich. 854 (1985).

In the meantime, plaintiff had filed complaints with the Michigan Civil Rights Commission and the Equal Employment Opportunity Commission. On April 11, 1985, she received her right to sue letter from the EEOC. She filed the instant *in pro per* complaint alleging Title VII violations on May 29, 1985.

## II

Defendants move for summary judgment, arguing that the State court proceedings detailed above are res judicata on plaintiff's Title VII claim.

The leading Supreme Court case is *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). There, the Supreme Court held that the full faith and credit provision of the United States Code (28 U.S.C. § 1738) applied to Title VII cases to require Federal courts to give the same preclusive effect to state court judgments that the judgment would have had in state court. In that case, Kremer, a Polish Jewish engineer, was laid off and not rehired although other laid-off employees were rehired. He claimed discrimination and filed a charge

with the EEOC under Title VII. As is required by Title VII procedure, the EEOC referred plaintiff's charges to the New York state agency, the New York State Division of Human Rights (NYHRD). The NYHRD found no probable cause to believe that plaintiff had suffered from discriminatory practices. Plaintiff appealed to the New York Supreme Court Appellate Division, which affirmed. Then when plaintiff got his EEOC right to sue letter, he brought suit in Federal court.

The Supreme Court held that the Appellate Division's judgment affirming the NYHRD's decision meant, under New York law, that the plaintiff was precluded from bringing any other action in New York courts based on the same events. Therefore, the Supreme Court said, the full faith and credit provision applied to preclude plaintiff from litigating his discrimination claim in Federal court.

Additionally, *Kremer* rejected plaintiff's claim that the New York judgment did not resolve the issue of whether he had been discriminated against. The Court said that the alleged discriminatory acts were prohibited by both New York and Federal law, and plaintiff could not succeed on a Title VII claim consistent with NYHRD's judgment that there was no reason to believe that he was fired and not rehired because of discrimination. Finally, the Court noted that for preclusion to apply, the litigant must have had a "full and fair" opportunity to litigate. Minimal due process must be satisfied.

The Sixth Circuit in *Loudermill v. Cleveland Board of Education*, 721 F.2d 550 (1983), *affirmed* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), held that *Kremer* requires Federal courts to apply state preclusion principles:

We construe *Allen* [*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)] and *Kremer* to compel application of traditional principles of claim preclusion in the § 1983 context, as indeed our Court's precedents suggest. (citing cases). Applied to the instant case, *Al-*

*len* and *Kremer* suggest that we scrutinize Ohio law to assess the preclusive effect it would attach to the state law dismissal of Donnelly's claims. If Ohio courts would hold that the prior determinations preclude any further litigation under principles of res judicata, then we are bound to affirm the dismissal of Donnelly's claims.

*Id.* at 557.

Defendants claim that under *Kremer* and *Loudermill* plaintiff's discrimination claim is precluded in Michigan by the state court judgments affirming the Tenure Commission's decision. Under *Kremer,* such preclusion would be binding on this Court. Defendants concede that this case is not directly analogous to *Kremer* in that the state agency, whose decision was affirmed in the state court, was not the Civil Rights Commission (which is the analogue to the NYHRD) but the Tenure Commission. However, defendants argue that this difference does not matter since the plaintiff chose to litigate her discrimination claim in front of the Tenure Commission, and since the Tenure Commission made specific findings about the discrimination allegation. In addition, defendants argue that plaintiff had a full and fair opportunity to litigate her employment discrimination claim in front of the Tenure Commission, since she was able to present evidence and rebut evidence from the School Board. Defendants therefore claim that the state court determination in this case was either res judicata or collateral estoppel, and that plaintiff would be precluded from raising her claims in state courts.

■■■ The basic question is whether plaintiff's claim would be barred in Michigan courts under doctrines of either res judicata or collateral estoppel.

A significant discussion of the Michigan law of res judicata and collateral estoppel is found in *Jones v. Chambers,* 353 Mich. 674, 91 N.W.2d 889 (1958). The Court said:

Where issues of fact of law have been finally decided by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail.

Michigan's leading case on the doctrine of *res judicata* is Justice Cooley's opinion in *Jacobson v. Miller,* 41 Mich 90 [1 N.W. 1013]. The second headnote gives us this pertinent summary:

"An adjudication is conclusive in respect to (1) the subject matter of the litigation, and (2) the point of fact or law or both necessarily settled in determining the issue on the subject matter."

See, also, *Viaene v. Mikel,* 349 Mich. 533 [84 N.W.2d 765].

The courts have, however, divided to some degree as to whether the principle involved is an application of the doctrine of *res judicata,* or a somewhat separate doctrine of collateral estoppel.

The United States supreme court has answered this problem in legal linguistics thus:

"We have often held that under the doctrine of *res judicata* a judgment entered in an action conclusively settles that action as to all matters that were or might have been litigated or adjudged therein. But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' This latter aspect of *res judicata* is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation." *Partmar Corporation v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 90, 91 (74 S.Ct. 414 [415, 416], 98 L.Ed. 532).

*Id.* at 680–81, 91 N.W.2d 889.

*See also Hlady v. Wolverine Bolt Co.,* 393 Mich. 368, 224 N.W.2d 856 (1975), where the court said:

[T]he doctrine of *res judicata* applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation.

*Id.* at 376, 224 N.W.2d 856.

And the Court of Appeals pointed out in *Stolaruk Corporation v. Department of Transportation,* 114 Mich.App. 357, 319 N.W.2d 581 (1982):

In order for collateral estoppel to apply, the same ultimate issues underlying the first action must be involved in the second action. The parties must also have had a full opportunity to litigate the ultimate issues in the former action. ... Finally, collateral estoppel only applies where there is mutuality of estoppel. Mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit.

*Id.* at 362, 319 N.W.2d 581.

Thus, the Michigan law of res judicata and collateral estoppel is completely consistent with the explanation of these doctrines given by the Supreme Court in *Kremer:*

Accordingly, the Federal Courts consistently have applied res judicata and collateral estoppel to causes of actions and issues decided by state courts. (citing cases) ... [T]his court has consistently emphasized the importance of the related doctrines of res judicata and collateral estoppel in fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. (citing cases). Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties. (citing cases). Thus, invocation of res judicata and collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication. (citing cases).

*Kremer* 456 U.S. at 467, note 6, 102 S.Ct. at 1889, note 6.

Applying these standards, a Michigan court would find that plaintiff's employment discrimination claim was precluded by the Michigan court's affirmations of the Tenure Commission's decision that there was just and reasonable cause for plaintiff's discharge.

Plaintiff argues that she cannot be precluded from bringing her Title VII claim now because the issue before the Tenure Commission was whether there was just cause for her discharge, whereas the issue in her Title VII claim is whether she experienced discrimination.

The Court rejects this argument. Plaintiff raised the issue of discrimination as a defense to the allegation that she was fired for just cause. Plaintiff was given a full and complete opportunity to adjudicate her claim of discriminatory motive before the State Tenure Commission, and it was adjudicated there. Careful consideration of the claim was given by the State Tenure Commission and was rejected, with explicit reasons, after a full and complete hearing.

Further, plaintiff clearly was afforded due process before the Commission. Not only did the Commission review the 2,200 pages of transcript generated by months of School Board hearings, the Commission held eight hearings of its own that generated an additional 1,500 transcript pages.

Whether we analyze the question as one of res judicata or collateral estoppel, the result is the same here. Under res judicata there has been a final judgment on the merits of this action, which included a defense of age and religious discrimination. Under collateral estoppel, the Commission's determination of plaintiff's discrimination defense was necessary to its judgment of just discharge. This Commission decision was affirmed by Michigan courts, and thereby precludes relitigation of the same

issue in a different cause of action.[1] The plaintiff has had a full opportunity to litigate her age and sex discrimination claims. Under Michigan law, she would be precluded from bringing the claim of age or religious discrimination in Michigan courts. Because she would be precluded there, she is precluded from making such a claim in this Court. As Justice Blackman pointed out in *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984):

> It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.

*Id.* at 81, 104 S.Ct. at 896.

It therefore appears clear that there is adequate basis for defendant's motion to dismiss, and the motion will be granted.

With reference to defendants Goodman and Scholtz, attorneys for Mr. Detert and the School Board, there is no question but that the case should be dismissed for failure to state a cause of action.

Therefore, for the reasons given, the entire lawsuit will be dismissed.

Defendants may tax costs.

---

**1.** State agency determinations which are not reviewed by state courts are not entitled to preclusive effect. *Elliott v. The University of* *Tennessee,* 766 F.2d 982 (6th Cir.1985), *cert granted,* —— U.S. ——, 106 S.Ct. 522, 88 L.Ed.2d 455 (1985).